363 So.2d 716 (1978)
Coy JOHNSON, John Dan Brown and Jesse R. Joyner, Plaintiffs-Appellants,
v.
ELECTRONIC SALES & SERVICE CO., INC. and Hugh L. Norton, Defendants-Appellees.
No. 13631.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1978.
*717 Hess & Washofsky by Dennis M. Angelico, New Orleans, for plaintiffs-appellants.
Cook, Clark, Egan, Yancey & King by John F. Cassibry, Shreveport, for defendants-appellees.
Before BOLIN, HALL and MARVIN, JJ.
HALL, Judge.
Plaintiffs, former employees of the defendant corporation, filed suit against the corporation and its president, alleging their employment was terminated because of their union membership and activity in violation of LSA-R.S. 23:981, et seq., the Louisiana Right-to-Work Law.[1] Plaintiffs sought an injunction and damages.
Defendants filed a declinatory exception of lack of jurisdiction over the subject matter. Holding that the subject matter of the suit is within the exclusive jurisdiction of the National Labor Relations Board, the trial court sustained the exception and dismissed the suit. Plaintiffs appealed. We affirm.
The issue is whether the so-called right-to-work exception to the rule of federal preemption and exclusive NLRB jurisdiction, contained in Section 14(b) of the Taft-Hartley Act, 29 U.S.C.A. § 164(b),[2] applies to the subject matter of this suit in view of the fact that the petition alleges a violation of the Louisiana Right-to-Work Law.
The general rule is that the field of labor relations is perempted by federal law. In matters arising out of activities arguably regulated by Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C.A. §§ 157 and 158,[3] both state and federal court jurisdiction must yield to the jurisdiction of the National Labor Relations Board. San Diego Building Trades Council, Etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).[4] The activities complained of here are clearly regulated by Section 8[5] and *718 state court jurisdiction must yield unless, as argued by plaintiffs, the "right-to-work" exception to the rule of exclusive jurisdiction contained in Section 14(b) of the Taft-Hartley Act is applicable to the subject matter of this case.
Section 14(b) permits states to prohibit the execution of agreements requiring membership in a labor organization as a condition of employment. Such agreements are commonly called union security agreements and state laws prohibiting such agreements are commonly called right-to-work laws. It has been recognized that state courts have jurisdiction to enforce state right-to-work laws, that is, laws prohibiting or regulating union security agreements. Retail Clerks Int. Assn., L. 1625 v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963); Oil, Chemical & Atomic Workers, Etc. v. Mobil Oil, 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976); Algoma Plywood & Veneer Co. v. Wisconsin Employ. R. Bd., 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691 (1949).
It has also been recognized, however, that state power or jurisdiction in connection with a right-to-work statute exists only where there is a union security agreement involved. Retail Clerks Int. Assn., L. 1625 v. Schermerhorn, supra;[6]Local No. 438 Construction & Gen. Lab. U. v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963).[7] See also Stricker v. Swift Bros. Const., 260 N.W.2d 500 (S.D.1977); Carpenters & Joiners Local Union No. 1097 v. Hampton, 457 S.W.2d 299 (Tex.Civ.App.-Tyler, 1970).
In the case before this court, there is no union security agreement between the employer and the labor organization of which plaintiffs are members. The case does not in any manner involve a union security agreement. The fact that the Louisiana Right-to-Work Law may go beyond the regulation of union security agreements and may regulate other activities, also regulated by the NLRA, does not bring such activity within the scope of state jurisdiction nor create an exception to the exclusive jurisdiction of the NLRB as to those activities. The so-called right-to-work exception created by Section 14(b) of the Taft-Hartley Act does not apply to activities unrelated to union security agreements even though such unrelated activities may also be regulated within the framework of a state statute styled a "Right-to-Work" law.
Plaintiffs also contend the state court has jurisdiction because it has jurisdiction of plaintiffs' action against the employer corporation's president, individually, under state law. Joining an executive officer *719 of the employer, through whom the corporate employer acted, in a suit arising out of activities arguably regulated by Section 8 of the NLRA, cannot serve to vest a state court with jurisdiction over the subject matter where that jurisdiction is perempted by federal law and exclusively vested in the NLRB.
The Louisiana court is without jurisdiction over the subject matter of this suit and the exception to the jurisdiction was properly sustained. The judgment of the district court dismissing plaintiffs' suit is affirmed at plaintiffs-appellants' costs.
Affirmed.
NOTES
[1] LSA-R.S. 23:981:

§ 981. Declaration of public policy
"It is hereby declared to be the public policy of Louisiana that all persons shall have, and shall be protected in the exercise of the right, freely and without fear of penalty or reprisal, to form, join and assist labor organizations or to refrain from any such activities."
[2] 29 U.S.C.A. § 164(b):

"(b) Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."
[3] 29 U.S.C.A. § 157:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."
29 U.S.C.A. § 158(a)(1) and (3):
"(a) It shall be an unfair labor practice for an employer
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
"* * *
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."
[4] Garmon:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."
[5] Plaintiffs also filed charges against the employer with the NLRB, alleging violation of Section 8(a)(1) and (3), based on the same alleged activities. The regional director refused to issue a complaint because there was insufficient evidence to warrant further proceedings. Plaintiffs took an administrative appeal which was denied on findings that the evidence failed to establish that they were laid off because of union or other concerted protected activity rather than because their employer did not have available work. The dual and parallel actions pursued by plaintiffs in this instance arising out of the same alleged facts illustrate the reason and necessity for the federal peremption and exclusive jurisdiction rules which prevent a duplicity of actions and possible conflicting results.
[6] Schermerhorn:

"As a result of § 14(b), there will arise a wide variety of situations presenting problems of the accommodation of state and federal jurisdiction in the union-security field . . . state power, recognized by § 14(b), begins only with actual negotiation and execution of the type of agreement described by § 14(b). Absent such an agreement, conduct arguably an unfair labor practice would be a matter for the National Labor Relations Board under Garmon."
[7] Curry:

"The allegations of the complaint, as well as the findings of the Georgia Supreme Court, made out at least an arguable violation of § 8(b) of the National Labor Relations Act, 29 U.S.C. § 158(b). Consequently, the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the National Labor Relations Board. (citations omitted) Nor is the jurisdiction of the Georgia courts sustainable, as respondents urge, by reason of the Georgia right-to-work law and by § 14(b) of the National Labor Relations Act, 29 U.S.C. § 164(b). This precise contention has been previously considered and rejected by this Court, (citations omitted) The Georgia Supreme Court clearly exceeded its power in authorizing the issuance of a temporary injunction."