Benjamin Allen BANFIELD and Robert Lindsey, Appellants,

v.

LAIDLAW WASTE SYSTEMS, Appellee.

No. 05–96–01425–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 1998.

**436**

Kenneth W. Byford, Maria S.R. Wieman, Byford & Associates, P.C., Dallas, for Appellant.

Dan Hartsfield, Michele Rogers Baird, Sharlee Ann Cole, Gardere & Wynne, L.L.P., Dallas, Samara L. Kline, Baker & Botts, Dallas, for Appellee.

Before LAGARDE, OVARD and ROACH, JJ.

## OPINION

ROACH, Justice.

Benjamin Allen Banfield and Robert Lindsey appeal the trial court's summary judgment in favor of Laidlaw Waste Systems. In two points of error, Banfield and Lindsey assert the trial court erred in determining that the National Labor Relations Act (NLRA)[1] preempts their claims for wrongful discharge asserted under the Texas Right to Work Law and their common law defamation claims. Because we conclude that (1) the wrongful discharge claims are preempted by the NLRA, and (2) the statements comprising the basis of appellants' defamation claims are not defamatory as a matter of law, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Banfield and Lindsey filed a lawsuit against their former employer, Laidlaw Waste Systems (Laidlaw), alleging they were fired for engaging in union organizing activity. They asserted claims for wrongful discharge in violation of the Texas Right to Work Law,[2] as well as common law claims of defamation, intentional infliction of emotional distress, and negligent supervision.[3] The trial court granted Laidlaw's motion to dismiss for lack of subject matter jurisdiction regarding appellants' claims for wrongful discharge, intentional infliction of emotional distress, and negligent supervision, ruling that the claims were preempted by the NLRA. The trial court granted appellants additional discovery time to pursue their remaining defamation claims. Later, appellants renewed their claims for wrongful discharge, intentional infliction of emotional distress, and negligent supervision and moved for reconsideration of the trial court's dismissal of these claims.[4] Laidlaw moved for summary judgment as to all of appellants' causes of action, including their defamation claim. The trial court granted Laidlaw's motion for summary judgment and denied appellants' motion for reconsideration.

## TEXAS RIGHT TO WORK LAW

This appeal requires us to examine the substance of the claims appellants assert under the Texas Right to Work Law to determine whether they are preempted by the NLRA. Among other things, the Texas Right to Work Law provides that a person may not be denied employment based on membership or nonmembership in a labor union. TEX.

1. The National Labor Relations Act, commonly referred to as the Wagner Act, was enacted in 1935. It was amended in 1947 by the National Labor Management Relations Act, known as the Taft Hartley Act. Throughout this opinion, NLRA is used to refer to the National Labor Relations Act as amended by the National Labor Management Relations Act.

2. The current version of the Texas Right to Work Law can be found at sections 101.051 -.053 of the Texas Labor Code. TEX. LAB.CODE ANN. §§ 101.051–053 (Vernon 1996). This was the version in effect at the time of appellant's discharge. The predecessor statute, repealed in

1993, is found in article 5207a of the revised civil statutes.

3. Appellants present no points of error regarding the trial court's judgment with respect to their claims for intentional infliction of emotional distress and negligent supervision.

4. Appellants renewed these claims after the National Labor Relations Board (NLRB) refused to issue a complaint on their charge of Laidlaw's section 8 violation. The NLRB ruled the complaint was time-barred by the applicable six-month limitations period. Appellants' appeal of this refusal was also denied.

LAB.CODE ANN. § 101.052 (Vernon 1996). Appellants claim that this provision prohibited Laidlaw from discharging them for their union organizing activity. For the purposes of this opinion, we assume, without deciding, that appellants asserted a viable cause of action under this provision.

Several distinct categories of claims are preempted under the NLRA. Section 301 of the NLRA preempts state law claims whenever resolution of the claim requires interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 408–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Relying on *Lingle*, appellants argue that because resolution of their claims does not require the court to construe a collective bargaining agreement, their claims are not preempted. However, this argument ignores the category of preemption under the NLRA which preempts state and federal courts from exercising jurisdiction on claims that are based upon conduct or activity that is arguably protected or prohibited under sections 7 or 8 of the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Because there is no collective bargaining agreement involved in this case, *Lingle* is inapplicable.

■ We begin with the general proposition that state and federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board (NLRB) in all cases arising out of activities that are arguably subject to sections 7 or 8 of the NLRA. *Id.* The *Garmon* preemption doctrine focuses on the conduct that forms the basis of the underlying claim and not the characterization of the claim under state law. *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). The pivotal inquiry is whether the state court controversy is the same or different from that which could have been presented to the NLRB. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

Section 7 of the NLRA guarantees employees the right to self-organize, form, join, or assist labor organizations and to engage in other concerted activity for the purposes of collective bargaining. 29 U.S.C.A. § 157 (West 1973). Section 8 prohibits an employer from interfering with an employee's exercise of section 7 rights and deems it an unfair labor practice for an employer to discriminate in the hiring or tenure of employment so as to encourage or discourage membership in a labor organization. 29 U.S.C.A. § 158(a)(1),(3) (West 1973).

■ Appellants' claims that they were wrongfully discharged for engaging in union organizing activity goes straight to the heart of the activity protected by sections 7 and 8 of the NLRA. Their claims under the Texas Right to Work Law rest solely upon conduct protected by section 7 and which, if interfered with, constitutes an unfair labor practice under section 8.

In support of their contention that their asserted claims for wrongful discharge under the Texas Right to Work Act are not preempted, appellants rely on several cases from other jurisdictions, primarily *Willard v. Huffman*, 250 N.C. 396, 109 S.E.2d 233, *cert. denied*, 361 U.S. 893, 80 S.Ct. 195, 4 L.Ed.2d 150 (1959), and *Taylor v. Hoisting & Portable Engineers Local Union 101*, 189 Kan. 137, 368 P.2d 8 (1962). We do not find the reasoning of these cases compelling. In both cases, the plaintiffs asserted a claim under their state's right to work law for wrongful discharge for membership or nonmembership in a union. *Willard*, 109 S.E.2d at 235; *Taylor*, 368 P.2d at 9–10. In holding that the plaintiffs' claims were not preempted by the NLRA, the North Carolina and Kansas Supreme Courts engaged in an unconvincing analysis that seems to ignore the plain import of *Garmon*. *Willard*, 109 S.E.2d at 241–242; *Taylor*, 368 P.2d at 11. In addition, both courts emphasized reliance on section 14(b) of the NLRA, which explicitly allows state regulation of agreements requiring membership in a union as a condition of employment, to support their holdings. *Willard*, 109 S.E.2d at 242–43; *Taylor*, 368 P.2d at 12. Later United States Supreme Court opinions have made clear that a state's jurisdiction pursuant to section 14(b) is activated when a union security agreement as de-

scribed in section 14(b) is actually negotiated and executed. *See Retail Clerks Int'l Ass'n Local 1625 v. Schermerhorn,* 375 U.S. 96, 105, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963).

■ Other cases cited by appellants involve enforcement of union security agreements contrary to state right to work laws. *See Sheet Metal Workers Int'l Ass'n v. Nichols,* 89 Ariz. 187, 360 P.2d 204 (1961); *Smith v. General Motors Corp.,* 128 Ind.App. 310, 143 N.E.2d 441 (1957); *Martin v. Dealers Transp. Co.,* 48 Tenn.App. 1, 342 S.W.2d 245 (1960). These state actions are precisely the type sanctioned by and excepted from preemption pursuant to section 14(b) of the NLRA. *See Schermerhorn,* 375 U.S. at 102–03, 84 S.Ct. 219. Because this case does not involve a union security agreement, these decisions are inapplicable to our analysis. The Texas Supreme Court has recognized a private cause of action based upon the Texas Right to Work Act for terminations based on union membership. *See Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115 (1957); *Vasquez v. Bannworths, Inc.,* 707 S.W.2d 886 (Tex.1986). However, it has never specifically addressed the issue of whether a cause of action exists under the Texas Right to Work Law for the conduct alleged by appellants. The Texas Supreme Court also has never considered whether such an action would be preempted by the NLRA. The only Texas cases addressing the preemption issue with respect to the Texas Right to Work Act are *Leiter Manufacturing Co. v. International Ladies' Garment Workers' Union,* 269 S.W.2d 409 (Tex.Civ.App.—Dallas 1954, no writ); *Borden v. United Ass'n of Journeymen & Apprentices,* 316 S.W.2d 458 (Tex.Civ.App.—Dallas 1958), *aff'd,* 160 Tex. 203, 328 S.W.2d 739 (1959); *Carpenters & Joiners Local Union v. Hampton,* 457 S.W.2d 299 (Tex.Civ.App.—Tyler 1970, no writ); and *Dallas General Drivers, Warehousemen & Helpers Local 745 v. Central Beverage, Inc.,* 507 S.W.2d 596 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

In *Leiter,* we concluded that because the discharge or layoff for union membership was held to be an unfair labor practice under section 8(a)(3) of the NLRA, an action for reinstatement based on the Texas Right to

Work Act alleging the same conduct was preempted. *See Leiter,* 269 S.W.2d at 410. In *Borden,* however, we held that a union member's state tort action for damages against two labor unions for interference with his right to work at a construction site in violation of the Texas Right to Work Law was not preempted by the NLRA. *Borden,* 316 S.W.2d at 460–61. Both *Leiter* and *Borden* were decided before the Supreme Court's decision in *Garmon.*

In *Hampton,* the Tyler Court of Appeals, relying on *Local No. 438 Construction & General Laborers' Union v. Curry,* 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963), concluded that the plaintiff's action to enjoin picketing he claimed was to persuade him to use only union workers contrary to the Texas Right to Work Law, was preempted by the NLRA. *Hampton,* 457 S.W.2d at 302. Likewise, in *Central Beverage,* this Court concluded that the trial court lacked jurisdiction to enjoin picketing pursuant to article 5154(d) of the Texas Revised Civil Statutes because that statute could not expand "the state court's equitable jurisdiction into the domain pre-empted to the National Labor Relations Board ... as interpreted in *Garmon.*" *Central Beverage,* 507 S.W.2d at 599.

Other states·have found that simply because a cause of action can be founded upon a state right to work law does not necessarily mean that the state court has jurisdiction to hear it. *See Walles v. International Bhd. of Elec. Workers,* 252 N.W.2d 701, 706–07 (Iowa), *cert. denied,* 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977); *Johnson v. Electronic Sales & Serv. Co.,* 363 So.2d 716, 718 (La.Ct.App.1978); *Arena v. Lincoln Lutheran of Racine,* 149 Wis.2d 35, 437 N.W.2d 538, 549–550 (1989).

■ It is undisputed that the basis of appellants' wrongful discharge claims asserted under the Texas Right to Work Law is their termination for union organizing activities which is conduct subject to the NLRA. *See* 29 U.S.C.A. §§ 157, 158 (West 1973 & Supp. 1998). Appellants' claims do not fall within the exception created by section 14(b) of the NLRA because no union security agreement is involved. *See Schermerhorn,* 375 U.S. at 102–03, 84 S.Ct. 219. The fact that the Tex-

as Right to Work Law attempts to regulate conduct also regulated by the NLRA does not confer jurisdiction on the state courts or create an exception to the NLRB's exclusive jurisdiction. *See Central Beverage,* 507 S.W.2d at 599; *Johnson,* 363 So.2d at 718. Accordingly, we hold that the trial court lacked subject matter jurisdiction to hear appellants' claims for wrongful discharge under the Texas Right to Work Law because the claims are preempted by the NLRA. We overrule appellants' first point of error.

## DEFAMATION CLAIMS

In their second point of error, appellants contend that the trial court erred in ruling their defamation claims were preempted by the NLRA. At the outset, we note that the summary judgment order does not indicate the basis for the trial court's ruling. Laidlaw moved for summary judgment on the defamation claims based on preemption, the statute of limitations, as well as grounds involving the merits of appellants' defamation claims. On appeal, appellants present a single point of error challenging the trial court's ruling on the defamation claims only with respect to the preemption issue. Under that point of error, however, they address the other grounds set forth in Laidlaw's motion for summary judgment.

■ When there are multiple grounds asserted for summary judgment and the order is silent as to the ground upon which summary judgment was granted, the appealing party must negate all grounds on appeal. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 381 (Tex.1993). We do not reach the issue of preemption with respect to appellants' defamation claims because we conclude that the statements were not defamatory as a matter of law.

■ A defamatory statement is one in which the words tend to damage a person's reputation, exposing him to public hatred, contempt, ridicule, or financial injury. *Einhorn v. LaChance,* 823 S.W.2d 405, 410 (Tex. App.—Houston [1st Dist.], writ dism'd w.o.j.), *cert. denied,* 517 U.S. 1135, 116 S.Ct. 1420, 134 L.Ed.2d 544 (1996). Reference to appellants being "son of a bitching troublemakers" constitutes a constitutionally protected opin-

ion and is, therefore, not defamatory. *See Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 447 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Einhorn,* 823 S.W.2d at 412. Likewise, the characterization of appellants as "ring leaders" also cannot be the basis for a defamation claim because it merely relates to the undisputed fact that appellants were in-plant union organizers, "a right protected by federal law, not a crime or unethical act." *See Einhorn,* 823 S.W.2d at 411. Appellants also complain that Laidlaw managers stated to others that they intended "to fix it so that [appellants] would not be able to get a job anywhere to take care of their families or even get unemployment." These words were merely an expression of an intent to do an act. The words themselves could not, as a matter of law, injure appellants' reputations or expose them to hatred, contempt, ridicule, or financial injury. *See id.* at 410–11. While the preceding statements are the only ones discussed in appellants' brief, we have also reviewed the remaining statements set forth in the affidavits attached to appellants' response to Laidlaw's motion for summary judgment. We conclude the summary judgment evidence demonstrated, as a matter of law, that the statements were either not defamatory or were true. Appellants' second point of error is overruled.

We affirm the judgment of the trial court.